IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:22-cv-19-DWD |
| ) | |
| MATTHEW URBAN and the UNITED ) | |
| STATES OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is the Motion for Summary Judgment and Supporting Memorandum ("Motion") (Doc. 29) of Defendant, the United States of America ("United States"). Plaintiff and Defendant, Matthew Urban, filed separate Responses and Memorandums in Opposition to the Motion (Docs. 31 & 32). The United States replied to each of those filings (Docs. 33 & 34). For the following reasons, the Motion is **GRANTED**.

### I. Background

Plaintiff filed a two-count Complaint, grounded in negligence, against Urban and the United States. (Doc. 1). In Count I, Plaintiff alleged Urban, a Senior Airman in the United States Air Force, was driving from one Air Force Base to another Air Force Base on February 17, 2020. (Doc. 1, pgs. 1-2). Urban was allegedly acting under the orders and with the permission of the United States. (Doc. 1, pg. 2). Plaintiff's vehicle was traveling on Interstate 270 in Madison County, Illinois, when it "was struck by the vehicle…Urban was driving," allegedly within the scope of his employment with the United States. (Doc.

1, pg. 2). Urban allegedly fell asleep, causing his vehicle to strike Plaintiff's vehicle and resulting in injuries to and suffering by Plaintiff. (Doc. 1, pgs. 2-3). In Count II, Plaintiff made the same allegations, vicariously, against the United States. (Doc. 1, pgs. 3-4).

The United States filed an Answer and Affirmative Defenses to the Complaint. (Doc. 19). With respect to Count II, the United States "deni[ed], at the time of the collision, Defendant Urban was acting as an employee of the United States and operating a motor vehicle in the scope and course of his employment with the United States." (Doc. 19, pg. 2). On this basis, the United States asserted sovereign immunity. (Doc. 19, pg. 3). In doing so, the United States invoked the Federal Tort Claims Act ("FTCA"). (Doc. 19, pg. 3).[1] [2]

Now, the Motion requests a grant of summary judgment on Count II of the Complaint. (Doc. 29). The Motion includes a statement of material facts, which is summarized as follows.[3] [4] The United States Air Force authorized a Permanent Change of Station, reassigning Urban from Sheppard Air Force Base in Wichita County, Texas, to

---

[1] The Attorney General of the United States refused to certify that Urban was acting within the scope of his employment with the United States. *See* 28 U.S.C. § 2679(d)(3).

[2] Pursuant to the parties' Joint Motion to Stay, the Court stayed this case until it answered whether Urban was acting within the scope of his employment with the United States during the above-described accident. (Docs. 25 & 26). The parties agreed that the FTCA was the only way in which Plaintiff could recover against the United States. (Docs. 25 & 26). Accordingly, the parties were permitted to engage in limited discovery and motion practice on the scope of employment question. (Doc. 26, pg. 2).

[3] The United States attached the following to its Motion: (1) its Objections and Answers to Interrogatories (Doc. 29-1); (2) the Declaration of Senior Airman and Financial Operations Technician, Dara H. Morgan (Doc. 29-2, pgs. 1-3), (3) Urban's Request and Authorization for Permanent Change of Station (Doc. 29-2, pgs. 4-5); (4) a letter related to Urban's participation in the Air Force Recruitment Assistance Program (Doc. 29-2, pg. 6); and (5) Urban's Answers to Interrogatories (Doc. 29-3). In support of its Response, Plaintiff attached an Illinois Traffic Crash Report for the accident at issue (Doc. 31-1) and a map of the distance and time of travel for Urban's route(s) to Johnson County, Missouri, from Barrington, New Jersey (Doc. 32-2). Urban did not attach any documents in support of his Response (Doc. 32).

[4] Plaintiff and Urban's statements of facts are consistent with the statement of material facts offered by the United States. (Docs. 31, pgs. 1-3; 32, pgs. 2-4). Indeed, Urban admits those material facts. (Doc. 32, pgs. 2-3). As demonstrated by the citations to the record, the Court has independently verified the statement of material facts offered by the United States and included additional facts, as necessary.

Whiteman Air Force Base in Johnson County, Missouri. (Docs. 29, pg. 2; 29-2, pgs. 1, 4-5). Urban certified that he would depart Sheppard Air Force Base on January 31, 2020. (Docs. 29, pg. 2; 29-2, pgs. 2, 5). He was required to report to Whiteman Air Force Base by February 29, 2020. (Docs. 29, pg. 2; 29-2, pgs. 2, 4). If Urban traveled by private vehicle, which he did, then the Permanent Change of Station Order authorized two days of non-chargeable leave. (Docs. 29, pg. 3; 29-2, pgs. 2, 4). The United States Air Force did not assign a means or route of travel. (Docs. 29, pg. 4; 29-2, pg. 2). However, Urban submitted itineraries, describing his routes of travel, to a "military training leader" at Sheppard Air Force Base.[5] (Doc. 29-3, pg. 3). Plaintiff and Urban admit, though, airmen are not required to report intended travel routes for Permanent Change of Station Orders and such Orders are not contingent on travel itineraries.[6] (Docs. 29, pg. 4; 29-2, pg. 3; 31, pg. 15; 32, pg. 3).

Before reporting to Whiteman Air Force Base, Urban traveled to his home in Barrington, New Jersey, where, between February 3 and 14, 2020, he was authorized 12 days of non-chargeable leave to participate in the voluntary United States Air Force Recruitment Assistance Program. (Docs. 29, pgs. 3-4; 29-2, pgs. 2-3, 6). While doing so, Urban did not receive compensation beyond his normal pay and benefits or payment for meals, lodging, travel, or expenses. (Docs. 29, pg. 4; 29-2, pg. 3). Urban was required "to file a letter of verification from the recruiting squadron with the travel voucher in order not to be charged leave for th[e] period" of participation in the Recruitment Assistance Program. (Doc. 29-2, pg. 5). Further, as a general matter, the United States Air Force rules

---

[5] Urban is not in possession of these itineraries. (Doc. 29-3, pg. 3).
[6] The Court notes neither Plaintiff nor Urban submitted a Declaration to dispute this, or any other, fact asserted by the United States, which submitted Sr. Airman Morgan's Declaration. (Doc. 29-2, pgs. 1-3).

3

and regulations applied to Urban and, at the time of the accident at issue, the United States Air Force had the general authority to grant Urban leave, order Urban to report to a specific place at a specific time, cancel Urban's leave, change orders relating to Urban, and order Urban to end or cancel any leave.[7] (Doc. 29-1, pgs. 1-2).

On February 16, 2020, at approximately 10:00 a.m., Urban departed Barrington, New Jersey, in his private vehicle, for Johnson County, Missouri. (Docs. 29, pg. 3; 29-3, pg. 3). At approximately 6:00 or 7:00 p.m. on February 16, 2020, Urban parked at a rest area near Indianapolis, Indiana, to sleep for 7 to 8 hours. (Docs. 29, pg. 3; 29-3, pg. 3). Some hours later, at approximately 1:00 a.m. on February 17, 2020, Urban resumed his travel by departing the rest area. (Docs. 29, pg. 4; 29-2, pg. 4). The accident at issue occurred around 3 to 4 hours later in Madison County. (Docs. 31, pg. 2; 31-1, pg. 1).

Due to the accident, Urban did not arrive at Whiteman Air Force Base in Johnson County, Missouri, until March 6, 2020, at which time he began 8 weeks of convalescent leave. (Docs. 29, pg. 4; 29-2, pg. 2). Urban's "duty status," for the time period between Air Force Bases, was not recorded until he arrived in Missouri. (Docs. 29, pg. 4; 29-2, pg. 3).

### III. Analysis

In this case, the Court is presented with the single question of whether, at the time of the accident at issue, Urban was acting within the scope of his employment with the United States. This question arises in the context of a motion for summary judgment.

---

[7]The United States provided this information, subject to objections to breadth and vagueness, in its Objections and Answers to Interrogatories. (Doc. 29-1, pgs. 1-2).

Under Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment if the movant demonstrates there is no genuine dispute as to any material fact, such that the movant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *accord Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019) (quoting *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Assertions that a fact cannot be or is genuinely disputed must be supported by citations to particular parts of the materials of record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. *See* Fed. R. Civ. P. 56(c)(A). Alternatively, the assertions must be supported by a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(B).

If the movant presents evidence demonstrating the absence of a genuine dispute of material fact, then the burden shifts to the nonmovant to provide evidence of specific facts that create a genuine dispute of material fact. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Hudson Ins. Co. v. City of Chic. Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A genuine dispute of material fact exists when there is sufficient evidence favoring the nonmovant for a jury to return a verdict for that party. *See Driveline Systems*, 936 F.3d at 579 (quoting *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018), *reh'g denied* (Oct. 30, 2018)). However, speculation about a material fact, unsupported by evidence, cannot defeat summary judgment. *See Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 920 (N.D. Ill. 2019) (citing *Sbika v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721 (7th

Cir. 2018); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)). When considering a motion for summary judgment, the Court views all of the evidence and draws all reasonable inferences in a light most favorable to the nonmovant. *See Driveline Systems*, 936 F.3d at 579 (citing *Aregood*, 904 F.3d at 482). The Court does not assess credibility, choose between competing inferences, or balance the weight of conflicting evidence. *See id.* (quoting *Stokes v. Bd. Of Educ. of the City of Chic.*, 599 F.3d 617, 619 (7th Cir. 2010)).

Substantively, § 1346(b)(1) of the FTCA provides district courts with exclusive jurisdiction over claims against the United States that seek money damages for injuries caused by the negligent act or omission of any Government employee acting within the scope of employment. *See* 28 U.S.C. § 1346(b)(1); *Midwest Knitting Mills, Inc. v. U.S.*, 950 F.2d 1295, 1296-97 (7th Cir. 1991); *accord Nationwide Ins. Co. v. U.S.*, 114 F. Supp. 2d 745, 749 (N.D. Ill. 2000). The circumstances must be such that "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See* 28 U.S.C. § 1346(b)(1); *accord Midwest Knitting Mills*, 950 F.2d at 1297; *Nationwide*, 114 F. Supp. 2d at 749-50. Likewise, § 2674 of the FTCA renders the United States liable, relating to the tort claims in title 28, "in the same manner and to the same extent as a private individual under like circumstances." *See* 28 U.S.C. § 2674.

For a servicemember, "acting within the scope of his office or employment" means "acting in line of duty." *See* 28 U.S.C. § 2671. Questions about these terms are considered under the state law of *respondeat superior*. *See Duffy v. U.S.*, 966 F.2d 307, 314 (7th Cir. 1992).

In Illinois, when considering whether an employee's acts were within the scope of employment, courts consider whether the conduct (1) was the kind the employee was

6

employed to perform, (2) occurred substantially within the authorized time and space limits of the employer, and (3) was actuated, at least in part, by a purpose to serve the employer.[8] *See Bagent v. Blessing Care Corp.*, 224 Ill.2d 154, 164 (2007) (quoting *Pyne v. Witmer*, 129 Ill. 2d 351, 359 (1989)); Restatement (Second) of Agency § 228(1) (1958). Each question must be answered in the affirmative for the conduct to be deemed within the scope of employment. *See Bagent*, 224 Ill.2d at 164 (quoting *Pyne*, 129 Ill. 2d at 359); Restatement (Second) of Agency § 228(2) (1958). The plaintiff has the burden of showing a contemporaneous relationship between the tortious act and the scope of employment, and the relationship "must exist at the time of and in respect to the particular facts out of which the injury arose." *See Bagent*, 224 Ill.2d at 165 (citing *Pyne*, 129 Ill. 2d at 360); *accord Doe ex rel. Doe v. Lawrence Hall Youth Servs.*, 2012 IL App (1st) 103758, ¶ 15.

As a general matter under Illinois law, "an employee traveling to or from work outside actual working hours is not in the scope of employment." *See Pyne*, 129 Ill. 2d at 356; *accord Hoy v. Great Lakes Retail Servs., Inc.*, 2016 IL App (1st) 150877, ¶ 30 ("The general rule in *Pyne* suggests the common-sense principle that an employee commuting to or from work is not acting within the scope of employment."); *Pister v. Matrix Serv. Indus. Contrs., Inc.*, 2013 IL App (4th) 120781, ¶ 46 ("Ordinarily, an employer is not liable for an

---

[8]The first factor broadly includes authorized conduct, conduct of the same general nature, and acts incidental to authorized conduct. *See Gaffney v. City of Chic.*, 302 Ill. App. 3d 41, 50 (1998) (citing Restatement (Second) of Agency § 229(1), cmt. a). Factors relevant to determining whether conduct, while not authorized, was within the scope of employment include the following: (1) whether or not the act is one commonly done by employees; (2) the time, place, and purpose of the act; (3) the previous relations between the employer and the employee; (4) whether the act is outside the enterprise of the employer; (5) whether the employer has reason to expect such an act will be done; (6) the similarity of the act done to the act authorized; and (7) whether the instrumentality by which the harm is done was furnished by the employer. *See id.* (citing *Wilson v. Clark Oil & Refining Corp.*, 134 Ill. App. 3d 1084 (1985)).

7

employee who is going to or coming from work."); *Veldhuizen v. Eppenstein*, 2016 IL App (3d) 160095-U, ¶ 15 (" 'If the ultimate goal of the travel is nothing more than conveying the employee to a regular work site, *respondeat superior* liability does not attach.' "). The "key point" is that there is nothing work-related about the travel except the fact that it gets the employee to or from work. *See Hoy*, 2016 IL App (1st) 150877, ¶ 31.

However, the Supreme Court of Illinois noted exceptions to the general rule exist, at least in cases of workers' compensation, "for employees who are caused by their employers to travel away from a regular workplace or whose travel is at least partly for their employers' purposes rather than simply serving to convey the employees to or from a regular jobsite." *See Pyne*, 129 Ill. 2d at 356 (citing *Int'l Art Studios v. Indust. Comm'n*, 83 Ill. 2d 457, 460 (1980); *Givenrod-Lipe, Inc. v. Indust. Comm'n*, 71 Ill. 2d 440, 444 (1978); *Warren v. Indust. Comm'n*, 61 Ill. 2d 373, 377 (1975); *Irwin-Neisler & Co. v. Indust. Comm'n*, 346 Ill. 89, 93 (1931); *Hall v. DeFalco*, 178 Ill. App. 3d 408, 413 (1988)); *but see Hoy*, 2016 IL App (1st) 150877, ¶ 33 (noting, in a discussion of the first *Pyne* exception, the "undisputed question" presented in *Pyne*, *i.e.*, whether the employee engaged in a "frolic" from the scope of employment, was not presented in *Hoy*, and is not presented here); *Pister*, 2013 IL App (4th) 120781, ¶¶ 51-52 ("As [the defendant] correctly notes, *Pyne* does not apply the 'traveling employee' theory of liability; rather, the question raised in *Pyne* was whether the employee was on a 'frolic' or 'detour' from his employment."). In the context of the latter exception, the First District of the Illinois Appellate Court reasoned:

> An employee driving to work is always doing so at the direction of the employer and to do whatever the employer asks him or her to do, once there. If that were all it took to establish that travel to work was 'at least

>partly for their employers' purposes' [citation], this exception would swallow the general rule in *Pyne* that travel to and from work is not enough, by itself, to establish *respondeat superior* liability.

*See Hoy*, 2016 IL App (1st) 150877, ¶ 36.

It is because of this reasoning that the focus of the inquiry is on the travel itself. *See id*. ¶ 37. If the travel only accomplishes the transport of the employee to the workplace, then the general rule articulated in *Pyne* applies. *See id*. ¶¶ 37, 40. The Court emphasizes, "[i]t is only if there [is] something unique about the *travel itself* that serves the employer's purpose, other than the mere transport of the employee to the job site, that the exception to the general rule applies." *See id*. (Emphasis in original.)

Notably, courts within the Seventh Circuit, applying Illinois law to facts similar to those in this case, have declined to extend liability to an employer whose employee committed a tort during travel. *See Cobb v. Kumm*, 367 F.2d 132 (7th Cir. 1966) (affirming the district court's grant of summary judgment for the United States, where the defendant, a United States soldier who was "on the last day of a fifteen day 'leave' in transferring from his post in…Colorado…to a post in Chicago," was driving a personal vehicle when he rearended plaintiff's vehicle, was on his way to report for duty, was not yet in an employer-employee relationship, and the United States was "unconcerned" with how he reached his new post and had no control over and received no convenience from the means or course of his travel); *Badger State Mut. Cas. Co. v. U.S.*, 383 F. Supp. 1226, 1231 (E.D. Wisc. 1974) (noting, under *Cobb* and the Illinois law of *respondeat superior*, "a serviceman, whenever leave en route has been granted, is not within the scope of his employment during the period within which he leaves one permanent duty station and

9

reports to another," such that, "[i]n between his status[,] [he] is to be considered as a private person on leave or vacation").

Now, in its Motion, the United States argues, at the time of the accident, Urban was on leave from military duties and driving a private vehicle from his home to his new duty station. (Doc. 29, pg. 8). The United States notes that Urban departed Barrington, New Jersey, two days after completing the voluntary Recruitment Assistance Program, and the accident occurred 12 days before Urban was required to report to Whiteman Air Force Base. (Doc. 29, pgs. 8, 10-11). The United States submits that this is an indication of Urban's ability to control the timing, means, and methods of travel. (Doc. 29, pgs. 8, 10-11). For example, Urban controlled the date of departure, the route of travel, and the stops along that route of travel. (Doc. 29, pg. 11). In addition, the United States notes that the Recruitment Assistance Program offered no special compensation or reimbursement to Urban, the Air Force never changed his report date, and Urban's duty status was not updated until his arrival at Whiteman Air Force Base. (Doc. 29, pgs. 8, 10-11). In sum, the United States believes there was nothing unique about Urban's travel. (Doc. 29, pg. 8).

In Response, Plaintiff argues Urban's conduct was within the scope of his employment because it was the kind of conduct that he was employed to perform. (Doc. 31, pg. 7). Under the factors relevant to this question, Plaintiff argues periodic travel to a new duty station is a normal and customary part of military service, Urban was accountable to the Air Force at all times up to and including the accident, changes of station are common within the Air Force, the Air Force expected Urban to participate in the Recruitment Assistance Program and incentivized his travel by private vehicle to

10

Whiteman Air Force Base, and the Air Force, by granting Urban 2 days of non-chargeable leave for traveling by private vehicle, essentially "told Urban how to travel…and put him behind the wheel of the instrumentality that harmed Plaintiff." (Doc. 31, pgs. 8-10).

Further, Plaintiff argues Urban's conduct occurred substantially within the time and space limits authorized by the Air Force. (Doc. 31, pg. 7). Plaintiff notes the Air Force caused Urban to travel away from Sheppard Air Force Base, Urban's travel to and from New Jersey was partly to serve in the Recruitment Assistance Program, Urban was compensated for that service with the ability to return home without expending leave, and the non-chargeable leave Urban obtained for that service and traveling via a private vehicle is not akin to leave for a vacation. (Doc. 31, pgs. 10-14). Plaintiff claims non-chargeable leave did not allow Urban to do as he pleased, as the Air Force could alter that leave and Urban was required "to file a letter of verification from the recruiting squadron with the travel voucher in order not to be charged leave for th[e] period" in the Recruitment Assistance Program. (Docs. 31, pgs. 14-15; 29-2, pg. 5). Finally, Plaintiff argues Urban's conduct was actuated by a purpose to serve the United States because his participation in the Recruitment Assistance Program helped the Air Force and his travel to Whiteman Air Force Base was pursuant to a duty to the Air Force. (Doc. 31, pgs. 7, 16).

Urban, in his Response, incorporates many of the arguments of Plaintiff. (Doc. 32, pgs. 7-9). He also independently emphasizes that "[f]ollowing direct orders—including [to] mov[e] from base to base…--is the core part of the conduct…[he] is employed to perform." (Doc. 32, pg. 7). Like Plaintiff, Urban distinguishes non-chargeable leave, which was extended to him for participating in the Recruitment Assistance Program and

traveling by private vehicle, from vacation leave. (Doc. 32, pg. 8). Urban argues non-chargeable leave "is simply an authorized absence from general duty that is not charged against leave granted to all military personnel and allows the service member to leave their station to perform specific acts as required or ordered…as conditions of their continued employment." (Doc. 32, pg. 8). Further, Urban argues the United States had complete and direct control over his movements while traveling, as evinced by, *inter alia*, his firm report date and the fact that his non-chargeable leave could be altered or canceled. (Doc. 32, pgs. 8-9). Similarly, Urban maintains his travel was unique because it "involved a member of the armed forces [who] received direct orders from a superior officer and [who] was always under the direct control" of the United States. (Doc. 32, pgs. 10-11). Finally, Urban states his conduct was caused by a purpose to serve the United States because he was ordered to change stations and report to Whiteman Air Force Base by February 29, 2020, and that order was a necessity of the Air Force. (Doc. 32, pg. 11).

Here, the Court **FINDS** the undisputed material facts place this case firmly within *Pyne's* general rule, such that Urban was not acting within the scope of his employment while traveling to Whiteman Airforce Base from his home in Barrington, New Jersey. *See Pyne*, 129 Ill. 2d at 356; *Hoy*, 2016 IL App (1st) 150877, ¶ 30; *Pister*, 2013 IL App (4th) 120781, ¶ 46; *Veldhuizen*, 2016 IL App (3d) 160095-U, ¶ 15. At the time of the accident, Urban was on non-chargeable leave, Urban was driving a private vehicle despite no requirement to do so, the United States did not dictate Urban's route of travel or discretion to stop along that route of travel, and Urban was not required to report his intended route of travel. *See Badger*, 383 F. Supp. at 1230-31 (holding a military

12

servicemember was not acting within the scope of his employment under *Cobb* and Illinois law, where, *inter alia*, "it was a transfer coupled with leave in which [the servicemember] had sufficient time to pursue his own pleasures," the servicemember "was not under compulsive direct travel orders but rather was given a total of 41 days to proceed at his own pace," the servicemember was no longer stationed at his former station "[u]pon the issuance of the orders for permanent change of station," the Navy was not "genuinely interested" in his activities and did not control the timing or route of his journey, and the "only substantive requirement" was a firm report date); (Docs. 29, pg. 4; 29-2, pgs. 2-3; 32, pg. 3). Indeed, at the time of the accident, Urban's only requirement was to report to Whiteman Air Force Base by February 29, 2020. *See Hoy*, 2016 IL App (1st) 150877, ¶ 32 (finding, under *Pyne's* general rule, the plaintiff could not establish respondeat superior liability, where he "established nothing more than the fact that [the defendant] was traveling to his workplace"); (Docs. 29, pg. 3; 29-2, pgs. 2-4).

Further, neither Urban's participation in the Recruitment Assistance Program, the general applicability of the Air Force's rules and regulations, nor the Air Force's general authority over Urban brought him within the scope of employment at the time of the accident. (Docs. 29, pgs. 3-4; 29-1, pgs. 1-2; 29-2, pgs. 2-3, 6). Urban received no extra compensation, benefits, or expenses for participating in the Recruitment Assistance Program and, at the time of the accident, that Program had ended and the associated leave had lapsed. (Docs. 29, pgs. 3-4; 29-2, pgs. 2-3, 6). Also, no facts related to the Air Force's rules and regulations or its general authority over Urban arose in this case. *See Badger*, 383 F. Supp. at 1229 ("The unique overall control which the military service has

13

over its members does not expand the legal doctrine of respondeat superior beyond the scope of employment as applicable state law for determining the liability of private employers."). The Court will not defeat summary judgment based on hypothetical scenarios or speculation. *See Moje*, 377 F. Supp. 3d at 920.

Notably, Urban departed Barrington, New Jersey, 13 days before his report date, despite having only 2 days of non-chargeable leave for travel and the fact that a nonstop trip would last approximately 16 hours and 59 minutes. (Docs. 29, pg. 2; 29-2, pgs. 2, 4; 31, pg. 1). The Court agrees this indicates Urban controlled his travel plans, including the departure date, route of travel, and stops. (Doc. 29, pgs. 8, 10-11). Likewise, the fact that Urban's "duty status" was not recorded until his arrival at Whiteman Air Force Base indicates the Air Force was not contemporaneously monitoring or updating his "duty status" during travel. (Docs. 29, pg. 4; 29-2, pg. 3). In sum, the Court **FINDS** Urban's travel while on non-chargeable leave had the sole purpose of transporting himself to Whiteman Air Force Base, such that the general *Pyne* rule and no exception applies in this case. *See Hoy*, 2016 IL App (1st) 150877, ¶¶ 37, 40 (finding the plaintiff could not establish facts that fit within the second *Pyne* exception, as there was nothing about the defendant's travel in his car that uniquely served his employer's purpose, beyond the fact that the car was transporting him to the company office and despite the fact that "he was summoned by his boss to the office"); *Veldhuizen*, 2016 IL App (3d) 160095-U, ¶ 15 (an employee obtaining a paycheck from his employer's office did not serve the employer's purpose, where, despite the fact that the employee was driving to and from the employer's office, there was nothing about the travel in his personal car that uniquely served the employer's

14

purpose, as the employee was not transporting work materials or returning a company car); *Badger*, 383 F. Supp. at 1230 (rejecting a distinction between a military servicemember's "travel time" and "leave time" for purposes of the scope of employment analysis, where the "travel time" was granted so the time required to effect the change of stations would not be charged against the servicemember's leave time, such that the "travel time" was allotted for his own benefit and not the benefit of the Navy).

For these reasons, the Court **CONCLUDES** the United States demonstrated there is no genuine dispute as to any material fact related to Urban's scope of employment, such that the United States is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *accord Driveline Systems*, 936 F.3d at 579. In addition, nothing presented by Plaintiff or Urban create a genuine dispute of material fact. *See Carroll*, 698 F.3d at 564.

### IV. Conclusion

For the foregoing reasons, the Motion is **GRANTED**. Summary judgment is hereby **GRANTED** in favor of the United States and against Plaintiff. Further, the stay of this case is **LIFTED**. The Final Pretrial Conference is **SET** for February 1, 2024, at 10:00 a.m., and the Trial is **SET** for February 12, 2024, at 9:00 a.m., both in the East St. Louis Courthouse. Plaintiff and Urban are **DIRECTED** to submit a Joint Proposed Scheduling and Discovery Order to the Court's Chambers email by May 8, 2023. (Doc. 38).

**SO ORDERED.**

Dated: April 17, 2023

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge